UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SUPERIOR INSURANCE GROUP, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:14-cv-01163-RLY-MJD |
| ) | |
| CONTINENTAL CASUALTY COMPANY, ) | |
| BOSE MCKINNEY & EVANS LLP, and ) | |
| BRADFORD T. WHITMORE, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |
| ) | |
| WILMINGTON TRUST COMPANY, ) | |
| ) | |
| Intervenor. ) | |

**ENTRY ON THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT**

Presently before the court are the parties' cross motions for summary judgment. For the reasons set forth below, the court **GRANTS** Continental Casualty Company's ("CCC") motion and **DENIES** Superior Insurance Group's motion.

**I.    Background**

This is a related case to *IGF Ins. Co.* ("IGF"), *et al. v. Continental Casualty Co.*, Cause No. 1:01-cv-799-RLY-MJD (the "IGF Action"). The IGF Action arose from the sale of CCC's crop insurance book of business to IGF, IGF Holdings, Inc. ("IGFH"), and Symons International Group, Inc. (Indiana) ("SIG") (collectively the "IGF Parties") pursuant to the parties' contract of sale called the Strategic Alliance Agreement ("SAA").

1

When it became apparent that IGF could not pay CCC under the terms of the SAA, IGF sold its business to Acceptance Insurance Companies, Inc., on June 6, 2001. Things quickly went south.

The IGF Parties eventually filed suit against CCC for breach of contract, fraud, and breach of fiduciary duty. CCC and its affiliate, 1911 Corp., filed a counterclaim, which was later amended. The Amended Counterclaim asserted claims against the IGF Parties and four affiliated companies, Goran Capital, Inc. ("Goran"), Granite Reinsurance Company, Ltd. (Barbados) ("Granite Re"), Pafco General Insurance Company ("Pafco"), Superior Insurance Company ("Superior"), and the officers of those companies, G. Gordon Symons, Alan G. Symons, and Douglas H. Symons.[1] The Amended Counterclaim alleged that the IGF Parties breached the terms of the SAA (Count I and II); IGFH breached the terms of a promissory note (Count III); and that IGF fraudulently transferred assets to Goran, SIG, Granite Re, Pafco and Superior (Count IV). Count V alleged that the Individual and Corporate Counterdefendants should be liable for the contractual liabilities of IGF and IGFH under an alter ego theory. During the IGF Action, Superior was in rehabilitation proceedings in Florida, and Pafco was in rehabilitation proceedings in Indiana.

---

[1] IGF, IGFH, Granite Re, Goran, Pafco, SIG, and Superior are known collectively as the "Corporate Counterdefendants." Gordon Symons, Alan Symons, and Douglas Symons are known collectively as the "Individual Counterdefendants." The Individual and Corporate Counterdefendants are known collectively as the "Counterdefendants."

On March 22, 2007, the court granted CCC's unopposed Motion for Summary Judgment against the IGF Parties, and on March 31, 2007, the court granted CCC=s Motion for Summary Judgment on Counts I and II of their Amended Counterclaim, finding the IGF Parties liable to CCC in the amount of $34,258,078.

On March 21, 2008, CCC submitted to the Florida Department of Financial Services, as Receiver and Rehabilitator for Superior, a proof of claim against Superior due to the court's Entry on CCC's Motion for Summary Judgment against SIG in the amount of $34,258,078.  After reviewing its records as to Superior's transactions, as well as this court's Entry, the Receiver recognized and recorded on Superior's books and records a current liability to CCC of $6,732,800, including interest of $1,632,800, on account of the fraudulently transferred funds that were obtained by Superior in order to defraud CCC. (Filing No. 49-2 at 3).  In addition to the foregoing current liability, and because the court's judgment was not yet final, Superior's financial statements also recorded, as a contingent liability, CCC's claim for $34,258,078 against Superior as SIG's and IGF's alter ego.  (*Id*.).

Counts III-V of the Amended Counterclaim were tried to the court on November, 18, 19, 20, and 21, 2008, and January 8 and 9, 2009.  Following extensive Findings of Fact and Conclusions of Law, the court ruled in favor of CCC on Counts IV and V of its Amended Counterclaim.  (1:01-cv-799-RLY-MJD, Filing No. 257).  Among other things, the court determined that the Individual Counterdefendants owned the majority interest in and effectively controlled SIG, Granite Re, Superior, Pafco, IGF, and IGFH.  (*Id*.,

3

Findings of Fact ## 157-58). The court also noted that SIG indirectly owned 100% of Pafco and Superior. (*Id.*, Finding of Fact # 161). The court concluded:

> 129. The court finds that CCC has proven, by a preponderance of the evidence, that the Counterdefendants are liable under Section 14(2) and Section 15 of the Indiana Fraudulent Transfer Act, as alleged in Count IV of the Amended Counterclaim. The court further finds that CCC has proven, by clear and convincing evidence, that the Counterdefendants are liable under Section 14(1) of the Indiana Fraudulent Transfer Act, as alleged in Count IV of the Amended Counterclaim. The Counterdefendants are therefore jointly and severally liable to CCC in the amount of $24,000,000 plus interest as of June 1, 2006.
>
> 130. The court finds that the CCC has proven, by a preponderance of the evidence, that the Counterdefendants were alter egos of one another, and thus, the court finds the corporate veil should be pierced to prevent fraud and injustice, as alleged in Count V of the Amended Counterclaim. The Counterdefendants are therefore jointly and severally liable to CCC in the amount of $34,258,078 plus interest as of June 1, 2006. (*See* Findings of Fact ## 40, 43, 45).

(*Id.*, Conclusions of Law ## 129-30).

On March 30, 2012, in an effort to expedite the conclusion of the IGF Action, the court granted CCC's motion to sever Superior from the IGF Action. (*See* 1:12-cv-423-RLY-MJD, Filing No. 1).

On July 14, 2014, the court issued its Amended Final Judgment in the IGF Action in favor of CCC and against SIG and IGFH on Counts I and II of the Amended Counterclaim, and against "the Individual and Corporate Counterdefendants Alan G. Symons, Robert Symons, as successor in interest of G. Gordon Symons, IGFH, SIG, Goran Capital, Inc. and Granite Reinsurance Company, Ltd. on Counts IV (fraudulent transfers) and V (alter ego) of the Amended Counterclaim," "jointly and severally, in the amount of $34,258,078.00, plus prejudgment interest in the amount of $10,036,978

4

through December 31, 2012, for a total of $44,295,056.00, plus $3,458 per day since December 31, 2012 to the date of the entry of the Judgment." (1:01-cv-799-RLY-MJD, Filing No. 557, ¶¶ B, C, D).

On December 5, 2014, the court issued writs of execution against Alan and Robert Symons, IGFH, SIG, Goran and Granite Re in the IGF Action. (*Id.*, Filing Nos. 631-636). On the same day and in the same proceeding, the court granted in essence CCC's Motion for Proceedings Supplemental, including the garnishment proceedings against Superior Group and Superior Management in the IGF Action. Superior Group and Superior Management are a part of these proceedings because SIG is the 100% owner of Superior Management which, in turn, is the 100% owner of Superior Group, which, in turn, is the 100% owner of Superior and Pafco. (*See* 1:01-cv-799-RLY-MJD, Filing No. 36-2 at ECF p. 18, Organizational Chart; 1:01-cv-799-RLY-WGH, Filing No. 36-8, List of Officers and Directors).

The Seventh Circuit recently affirmed the court's Judgment in the IGF Action on all issues; however, the court did not resolve whether Alan Symons and the Estate of Gordon Symons could be individually liable under the IUFTA. *See Continental Cas. Co. v. Symons*, --F.3d--, 2016 WL 1118566, at *12 (7th Cir. March 22, 2016). The Seventh Circuit found the court's "alter-ego findings are enough to put Alan and Gordon's Estate on the hook without broadening beneficiary liability under the IUFTA to include vicarious or participatory liability." *Id*.

## II.     Current Litigation

As of July 14, 2014, the IGF Action consisted of cross claims that arose out of the Interpleader Complaint filed by Stephen W. Robertson, as the Commissioner of the Indiana Department of Insurance and as Rehabilitator of Pafco, and the Interpleader Complaint filed by the Florida Department of Financial Services, as Receiver and Rehabilitator for Superior.  The remaining claims to the assets were the competing general creditor claims of CCC, Bradford T. Whitmore,[2] and Bose McKinney & Evans LLP, and shareholder claims of Superior Group.  Accordingly, the court severed CCC's claims against Superior Group and initiated this action which includes, as intervenor, the Wilmington Trust Company ("WTC"), a competing creditor of SIG.  CCC, Mr. Whitmore, and WTC have since entered into a Settlement Agreement with CCC, pursuant to which CCC is entitled to collect all monies owed to CCC, Mr. Whitmore, or WTC; and CCC will share a portion of the funds collected with the other settling parties.  Bose McKinney & Evans, to date, has not participated in these proceedings.

CCC and Superior Group now cross move for summary judgment over the interpleaded assets of Superior and Pafco.  Mr. Whitmore has no objection to CCC's motion.  The assets of Superior total over $10 million while the assets of Pafco are far less substantial.  (*See* Filing No. 47-7, Order Approving Receiver's Motion for Approval and Windup and Termination Plan for Superior Insurance Company at 3; *see also* Filing

---

[2] *See Whitmore v. Symons Int'l Grp.*, 1:09-cv-391-RLY-MJD.  In that action, the Wilmington Trust Company intervened.

No. 446, Notice of Compliance with Order on First Stage of Rehabilitator's Complaint for Interpleader).

## III. Discussion

Superior Group claims it is entitled to the interpleaded funds because it is the only remaining claimant with a vested right to the interpleaded assets under the applicable insurance statutes. *See* Ind. Code § 27-9-3-40; Fla. Stat. § 631.271. Superior Group's position is incorrect. Indiana Code § 27-9-3-40 sets forth the order in which claims from an insurer's estate are paid and provides that claims of general creditors are given fifth priority, and claims of shareholders or other owners are given ninth priority. Similarly, Florida Statute § 631.271 provides that, when distributing claims from an insurer's estate, general creditors have sixth priority, while shareholders have tenth priority. CCC is a general creditor of Superior, while Superior Group's only claim to the interpleaded funds is as Superior's sole shareholder. CCC's claim to the interpleaded funds, therefore, must be given priority over Superior Group.

Having determined CCC's priority status over Superior Group, the court must next determine if CCC is entitled to recover all of the interpleaded funds. Superior Group claims that CCC is entitled to recover no more than $4.5 million, which represents the amount SIG fraudulently transferred to Superior and Pafco. (1:01-cv-799-RLY-MJD, Filing No. 257, Finding of Fact # 48 and Conclusion of Law # 61). CCC disputes Superior Group's assessment, and claims to have a direct creditor claim against Superior in the amount of $6,732,000. There is an easier route to the entirety of the interpleaded funds; that being, CCC's direct claim against Superior as an alter ego.

### A.     CCC's Claim to Superior's Interpleaded Funds

Superior has been a defendant in the IGF Action since 2001. Although CCC was precluded from proceeding to judgment against Superior on the alter ego claim because of the automatic stay issued by the Florida state court in the Superior rehabilitation proceedings, substantial evidence was presented at trial concerning Superior because of the patent overlap between the individuals involved and the actions they took on behalf of the various Symons entities, including Superior. As a result, the court determined that Superior participated in the fraudulent transfers and was an alter ego of the other Counterdefendants. (1:01-cv-799-RLY-MJD, Filing No. 257, Finding of Fact # 48; Conclusions of Law ## 42, 62, 82, 128, 129, 130). The absence of a judgment against Superior is not fatal to CCC's recovery of the interpleaded funds because, for the reasons discussed below, Superior Group is barred from relitigating the court's findings and conclusions regarding Superior's alter ego liability.

*Res judicata* bars relitigation of the same cause of action between the same parties where the first litigation resulted in a valid, final judgment on the merits. *Brzostowski v. Laidlaw Waste Sys., Inc.*, 49 F.3d 337, 338 (7th Cir. 1995). *Res judicata* applies to a prior federal court judgment if the following three factors are met: (1) identity of the parties or privies; (2) identity of the cause of action; and (3) final judgment on the merits. *Id.*

The term "privies" refers to "those who control an action, though not a party to it, and those whose interests are represented by a party to the action." *Tofany v. NBS Imaging Sys., Inc.*, 616 N.E.2d 1034, 1038 (Ind. 1993). Superior Group is the sole owner

8

of both Superior and Pafco. As the sole owner of Superior and Pafco, Superior Group had the right to appoint their board members, giving it direct control over both companies' affairs. This is exemplified by the fact that Superior Group's sole officer and director is Doug Symons, the late Gordon Symons' son and Alan's brother. (Filing No. 55-1, Affidavit of Douglas H. Symons ¶ 5). Until recently, Alan, Gordon, and Doug Symons each served on the board of Superior Group and Superior Management, and Gordon Symons was the chairman of each board. (*See* 1:01-cv-799-RLY-WGH, Filing No. 36-8, List of Officers and Directors). The overlapping control of Superior Group, Superior Management, and the Counterdefendants further shows that Superior Group and Superior Management are in privity with them.

Finally, the court's finding that Superior Group's and Superior Management's wholly owned subsidiaries, their sole officer and director, and SIG were all alter egos of one another logically compels a finding that Superior Group and Superior Management are in privity with the Counterdefendants. It is completely implausible that Superior Group and Superior Management, which have no assets other than Superior and Pafco, could somehow have interests that were not represented by the individuals and entities that it was controlled by and controlled. Accordingly, Superior Group and Superior Management are in privity with Superior and Pafco.

The other two elements are easily met. Superior Group's claim to the interpleaded funds and CCC's claim that Superior Group and Superior are alter egos of the Counterdefendants and thus responsible for the debt to CCC, is the same issue raised and

decided by the court in the IGF Action. The court issued a final judgment on the merits, which was later amended and affirmed by the Seventh Circuit.

Even if *res judicata* does not apply, Superior Group is collaterally estopped from relitigating these issues. Collateral estoppel bars the subsequent litigation of a fact or issue that was necessarily adjudicated in a former lawsuit if the same fact or issue is presented in the subsequent lawsuit. For a ruling to have collateral estoppel effect, four elements must be present: (1) the issue sought to be precluded must be the same as that involved in the prior litigation; (2) the issue must have been actually litigated; (3) the determination of the issue must have been essential to the final judgment; and (4) the party against whom estoppel is invoked must have been fully represented in the prior action. *H-D Michigan, Inc . v. Top Quality Serv., Inc.*, 496 F.3d 755, 760 (7th Cir. 2007).

These elements are met here. The issue sought to be precluded – alter ego liability – is the same issue that was actually litigated in the IGF Action. The alter ego determination was essential to the final judgment. And Superior Group was fully represented in the post-trial proceedings in the IGF Action by highly competent counsel, Alerding Castor LLP and Cohen & Malad. Prior to trial, the Counterdefendants were represented by highly competent counsel as well from the law firm of Scopelitis Garvin Light Hanson & Feary, P.C. and the Law Office of Robert M. Baker III.

Even if res judicata and collateral estoppel do not apply, the court finds that Superior is an alter ego of the Counterdefendants and equally liable for payment of the Final Judgment based on the evidence already in the record in the IGF Action. 1:01-cv-799-RLY-MJD. Having so found, the court finds CCC has a direct claim against

Superior as alter ego of SIG in the full amount of the Final Judgment, in an amount in excess of $46 million, and is entitled to Superior's surplus.

CCC also has a claim to the funds of Superior based on CCC's Final Judgment against SIG. SIG, as noted previously, is the 100% owner of Superior through SIG's 100% ownership of Superior Management, and Superior Management's 100% ownership of Superior Group. CCC has a judgment lien on all of SIG's property through the issuance of the writ of execution. *Blake v. First Crown Fin. Corp.*, 443 N.E.2d 871, 875 (Ind. Ct. App. 1983) ("A lien attaches to property of a debtor when an execution issues upon a judgment."). CCC also has a judgment lien on Superior Group's and Superior Management's property by virtue of the garnishment proceedings. *Freedom Group, Inc. v. Lapham-Hickey Steel Corp.*, 50 F.3d 408, 411 (7th Cir. 1995); *In re Perdew*, 227 B.R. 865, 868 (S.D. Ind. 1998). Indeed, a lien on all personal property of the judgment debtor is established at the time proceedings supplemental are commenced. *Radiotelephone Co. of Ind., Inc. v. Ford*, 531 N.E.2d 238, 240 (Ind. Ct. App. 1998) ("[A] creditor acquires an equitable lien on funds owed by a third party to the judgment debtor from the time the third party receives service of process in proceedings supplemental.").

Pursuant to the writ of execution on SIG and to the proceedings supplemental, CCC is entitled to ownership of all shares of stock owned by the judgment debtor, SIG, including the shares of stock owned by each subsidiary of its subsidiaries, down to Superior. CCC is entitled to enforce its judgment liens against those assets forthwith. Through acquiring ownership of Superior Group, CCC is also entitled to both waive any right Superior Group has to the surplus of Superior (vis-à-vis CCC) and/or step in the

shoes of Superior Group and assert its entitlement to the Superior surplus. With the issuance of the writ of execution against SIG and the commandment of proceedings supplemental, CCC is entitled to foreclose on those liens against all assets owned by Superior Group, Superior Management, and Superior.

### B. CCC's Claim to Pafco's Interpleaded Funds

In January 2005, CCC settled and released its claims against IGF and Pafco. (Filing No. 47-6, Settlement Agreement § 4.6). Significantly, the Settlement Agreement did not release CCC's claims against the Counterdefendants in the IGF Action. (*Id.* § 2.5). A condition of the Settlement Agreement specifically stated that CCC "may continue to prosecute [the IGF Action] against all parties other than IGF and Pafco." (*Id*. § 5). Thus, contrary to Superior Group's argument, the terms of the Settlement Agreement do not preclude CCC from any claim to the interpleaded assets. CCC's claims to Pafco's interpleaded funds stems from the fact that the Counterdefendants were found to have fraudulently transferred assets amongst one another rather than pay the debt owed to CCC and, as alter egos, funneled assets away from IGF so that it could not pay its creditors, including CCC. CCC clearly has a superior claim to Pafco's assets than Superior Group.

**IV.     Conclusion**

CCC is entitled to the interpleaded assets of Superior and Pafco over Superior Group.  The claim of Bose McKinney & Evans LLP is unresolved.  Accordingly, CCC's Motion for Summary Judgment (Filing No. 48) is **GRANTED** subject to the resolution of Bose McKinney's claim.  Superior Group's Motion for Summary Judgment (Filing No. 45) is **DENIED**.

**SO ORDERED** this 31st day of March 2016.

_____
RICHARD L. YOUNG,  CHIEF JUDGE
United States District Court
Southern District of Indiana

Distributed Electronically to Registered Counsel of Record.